180 So. 667

**HENDLEY et al. v. FIRST NAT. BANK OF HUNTSVILLE.***

**8 Div. 792.**

Supreme Court of Alabama.

Oct. 7, 1937.

Rehearing Denied April 21, 1938.

*The original decision in this case, announced October 7, 1937, was reported and published in 234 Ala. 535, 176 So. 348. The case having been placed upon the rehearing docket after publication, and opinions having been added on rehearing, it is here re-reported, and for convenient reference the original opinion is here republished.

David A. Grayson and Chas. v. Hendley, both of Huntsville, for appellants.

Watts & White, of Huntsville, for appellee.

Faith & Holland, Stevens, McCorvey, McLeod, Goode & Turner, and Gordon, Edington, Leighs & Gordon, all of Mobile, amici curiae.

BOULDIN, Justice.

This litigation concerns the equities between a senior and a junior mortgagee of real estate. In particular, the junior mortgagee challenges the senior mortgage as a subsisting lien upon the ground that the same is barred ·by prescription.' Without dispute the senior mortgage was given some 40 years before the junior mortgage, and some 45 years before any rights were asserted in this cause by the holder of such senior mortgage.

The mortgagor remained in possession until his death some 24 years after the maturity of the senior mortgage, and thereafter possession has been continuously held by his widow and heirs at law, who executed the junior mortgage.

On the other hand the senior mortgagee, in pleading and proof, asserts that the senior mortgage was promptly recorded, and stands unsatisfied on the record, that the mortgagor made numerous payments on interest and principal within the prescriptive period, and continued to make partial payments until his death; and thereafter his widow and heirs, succeeding to the equity of redemption, continued to make partial payments, especially the annual interest, until 1929, 1 year before the original junior mortgage was given.

Without going into further detail the evidence of such partial payments is satisfactory and without dispute. The parties here concur in the view that the sole question is whether this senior mortgage is still in force and effect as to the balance due.

Appellee, the junior mortgagee, relies upon the· now well-settled rule that the 20-year period of prescriptions creates an absolute bar, a conclusive, not a rebuttable

666

presumption; a rule of repose fixing a definite period beyond which courts will not inquire into matters permitted to sleep for 20 years, and which judicial experience has found more of injustice than of justice in entertaining them. Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201; Patterson v. Weaver, 216 Ala. 686, 114 So. 301; Oxford v. Estes, 229 Ala. 606, 158 So. 534; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820.

But the fault of the argument is in failing to note when the prescriptive period of 20 years begins to run in the various classes of cases.

The basic principle of prescription is not the mere lapse of time, but the lapse of time within which 'no recognition of a subsisting and continuing right or obligation appears.

As applied to mortgage liens, the rule is quite well stated in Braun v. Pettyjohn, 176 Ala. 592, 58 So. 907, 908, in this wise:

"It is true that, according to numerous decisions of this court, 20 years has been fixed as the period of prescription, after which mortgages upon which there had been no payment, or other acknowledgment, will be presumed to have been paid, and claims of every kind will be presumed to have been settled. McArthur v. Carrie's Adm'r, 32 Ala. [75] 76, 89 et seq., 70 Am.Dec. 529; Harrison et al. v. Heflin, Adm'r, et al., 54 Ala. [552] 553, 563; Coyle v. Wilkins et al., 57 Ala. 108, 111; Bailey et al. v. Butler, 138 Ala. 153, 156, 35 So. 111; Eliza Snodgrass v. John A. Snodgrass [176 Ala. 276], 58 So. 201, and cases cited.

"As will be seen from an examination of the cases, this prescription is predicated on the fact that there has been no payment on, or acknowledgment of, the mortgage during that period."

The same principle is recognized in the cases above cited, and many others cited therein.

A part payment on a mortgage debt, so intended by both parties, is a direct recognition on the part of the mortgagor of existence thereof, and that his possession is held in recognition of the interest of the mortgagee in the lands. Just as a partial payment before the bar of the statute of limitations is complete renews the obligation, and starts the running of the statute anew, so a partial payment on a mortgage debt as such starts anew the prescription period as to the mortgage lien.

While it does not seem to be insisted that the recorded mortgage may remain in force as between the parties, but not as to subsequent purchasers or mortgagees, we think well to make it clear that the constructive notice afforded by the record of a mortgage (Code, §§ 6860, 6887) is effective to protect the mortgagee as long as the mortgage remains a valid security between him and the mortgagor. There is no provision for a second recordation. The notice runs to all subsequent purchasers and mortgagees. Elsberry v. Boykin, 65 Ala. 336, 342.

It is the right of mortgagor and mortgagee to let a mortgage run as long as they wish. As friends and neighbors, the mortgagor may be accommodated by accepting small payments at infrequent intervals, or the mortgagee may prefer to have a long-time investment, receiving his interest payments.

Subsequent purchasers or mortgagees cannot ignore recorded mortgages, not indorsed satisfied, merely because more than 20 years have elapsed since maturity. If so, they act at their peril.

The decree denying relief to the senior mortgagees must be reversed. The cause will be remanded, with directions to so frame the decree as to recognize and enforce their superior lien for the balance due on the mortgage debt. For as much as the land covered by this mortgage is only a small part of that covered by the junior mortgage, the junior mortgagee should be permitted, at his election, to pay off the superior lien, and have foreclosure for his entire mortgage debt, including the sum paid to remove this superior incumbrance.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### On Rehearing.

BOULDIN, Justice.

The soundness of the opinion in this cause, rendered at the present term, and published in 234 Ala. 535, 176 So. 348, having been brought into question, the writer caused the same to be entered upon the rehearing docket for further consideration by the full court.

Upon a careful reconsideration, the writer is fully convinced the original opinion is sound; is the settled law of this state; sustained by the great weight of authority in other jurisdictions; by text writers; and by reason and justice.

With this conviction, and in view of the importance of the questions involved, this supplementary opinion is written.

It is important at the outset, to have a clear-cut statement of the legal and equitable principles involved. As stated in the original opinion the cause presents the question of priority as between a senior and a junior mortgagee of real estate.

The nature and duration of the constructive notice afforded by the record of the senior mortgage, and the nature and application of the presumption of payment from the lapse of 20 years after the maturity of such mortgage, as between senior and junior mortgagee, are the questions presented.

The first proposition asserted in the former opinion is that, as between mortgagor and mortgagee, and those succeeding to their respective equities, but no other or higher equities, the presumption of payment from the lapse of 20 years is overcome, or, as sometimes stated, has never arisen, if payments of interest or part payments on the principal have been kept up within the 20-year period. The fact of such payments, that a balance remained unpaid, that the original mortgage was still in the possession of the family of the assignee of record, that no satisfaction appeared of record, are without dispute in this case. As to this first and primary proposition there is no reasonable basis for doubt. The cases quoted and cited in the former opinion, as well as a host of others, show this to be the settled law of Alabama. All men are charged with a knowledge of the law in this regard.

The second proposition of the original opinion is that the record of a mortgage is constructive notice to subsequent purchasers and mortgagees; that the law provides for no other or additional notice; that, therefore, the mortgagor can convey no greater title than he has in the property, and purchasers or junior mortgagees, charged with constructive notice of the recorded mortgage, cannot acquire a better title than the mortgagor; that the presumption of payment after 20 years is the same rebuttable presumption whether asserted by a mortgagor or one claiming under him.

The opposing view, if we understand it, is that, after 20 years from the maturity of the mortgage, the record ceases to function as constructive notice to prospective mortgagees or purchasers for value; that, although the senior mortgagee has given all the notice required by law for the protection of purchasers, mortgagees, and judgment creditors (Code, § 6887), and by payments thereon the mortgage is still a subsisting lien as against the mortgagor, the 20-year presumption of payment is conclusive in favor of a junior mortgagee without actual notice that the senior mortgage is still in force; that the mortgagor may pass to him a title he does not own; and thus the junior mortgagee becomes the senior mortgagee, despite the record. In effect the contention is that such junior mortgagee has all the protection of a bona fide purchaser or mortgagee, for value without notice, just as if the senior mortgage had never been recorded.

We deal with this contention:

First. In the light of the decisions of this court declaring the law of Alabama, the governing law, if thereby settled.

Second. In the light of authority elsewhere. Decisions of other courts, and the works of eminent text writers, are highly persuasive if our own decisions are of doubtful import, or appear to be in conflict.

Third. The rule of reason and justice.

Goodwyn v. Baldwin, 59 Ala. 127, opinion by Justice Stone, is relied upon as authority for the proposition that the presumption of payment after 20 years is conclusive in favor of the junior mortgagee. That was a bill to foreclose a mortgage against purchasers from the mortgagor and from his devisees after his death. The decision is directed to the sufficiency of the averments of the bill to overcome the presumption of payment in the particular case.

The opinion sets out the averments of the bill seeking to avoid the effect of great lapse of time; on two grounds: first, admissions by the mortgagor of the existence of the mortgage as a valid security to the time of his death; second, all the while the mortgagor was in straightened financial conditions, and a foreclosure would have resulted in his absolute ruin. The decision then proceeds: "We do not think either or both of the above excuses are sufficient to over-

come the presumption of settlement or payment of the debt, from the lapse of time. Much more than twenty years—in fact, over thirty—had elapsed since the last payment on the debt, before this bill was filed: The bond, recited in and secured by the mortgage, is not exhibited to the bill, nor averred to be in existence. 'That said Raoul admitted up to his death the existence of said mortgage as a valid incumbrance on the lands therein conveyed,' is a very vague averment. When, where, to whom, and how often admitted, the bill fails to show. Such averment is too indefinite to overcome the presumption of payment, even if Raoul alone was adversely interested. By a much stronger reason is it insufficient to charge his vendees, who are impliedly admitted to be purchasers for value actually paid, and who are nowhere charged to have had knowledge that Raoul 'admitted the existence of said mortgage as a valid incumbrance on said lands.' If, by the registration of the mortgage they were constructively notified of the lien and incumbrance it created, it also notified them by its date and age that the law presumed the payment of the debt it was given to secure.—See Coyle v. Wilkins, supra."

This statement of the law must be viewed in the light of the case in hand, in the light of the decision cited by the learned justice as authority, and in the light of other decisions. The entire excerpt is dealing with the sufficiency of the averment of that bill. The learned justice specially notes that over 30 years had elapsed since the last payment on the debt, before the bill was filed. He does not say what would be the decision if partial payments up to shortly before filing the bill had been clearly averred, but citing the case of Coyle v. Wilkins, 57 Ala. 108, as authority is significant.

This case, opinion by Chief Justice Brickell, Justice Stone sitting, was a bill to foreclose a mortgage against personal representatives of a purchaser of the lands from a former purchaser, who, in turn, had purchased at an administrator's sale, under order of court, as the property of the mortgagor.

The statement of facts shows a part payment on the mortgage debt 17 years before the bill was filed. Said the court:

"A mortgagee would not be barred of a bill to foreclose, unless twenty years had elapsed without the payment of interest, or an admission of the existence of the mortgage debt. * * *

"The mortgage to the appellant was properly recorded, and it is not necessary, therefore, to examine the evidence which has been offered to show actual notice to those entering subsequently into possession of the premises under the mortgagor. The registration is equivalent to actual notice, and the purpose of the statutes which authorize it, is to make it operate as direct notice to all persons deriving title from the mortgagor. Having notice, they are bound by the mortgage; and the evidence fails to show any disclaimer by them of the title of the mortgage. * * *

"The only principle available to the mortgagor, is the presumption of payment of the mortgage debt, after the lapse of twenty years.—Relfe v. Relfe, supra [34 Ala. 500, 73 Am.Dec. 467]. That period had not elapsed when this bill was filed, and (independent of the evidence of a partial payment within seventeen years), the presumption could not arise."

Elsberry v. Boykin, 65 Ala. 336, opinion by Chief Justice Brickell, was a bill to foreclose a senior mortgage, the junior mortgagee set up the statute of limitations, and staleness of demand, based on the same policy of repose as the 20-year rule.

The purport of the decision is sufficiently shown in second headnote, reading: "When a mortgage has been delivered and duly recorded, the subsequent possession of the mortgagor is in subordination to the title of the mortgagee, unless asserted as adverse and hostile so openly and notoriously as to raise the implication of notice; and a junior mortgagee, with full covenants of warranty, who is let into possession, can not set up the statute of limitations, or the staleness of the demand, in defense of a bill for foreclosure by the first, except under the same circumstances which would be available to the mortgagor himself."

Christopher v. Shockley et al., 199 Ala. 681, 75 So. 158, was a bill to foreclose a mortgage against a purchaser from the mortgagor for full value under warranty deed followed by actual possession under claim of title for more than 10 years. The opinion by Justice Somerville opens with this: "So far as notice to subsequent purchasers is concerned, the only duty resting upon a mortgagee is the due registration of the mortgage in the office of the probate judge, which is conclusive

notice to all the world of everything that appears from the face of the mortgage."

After finding a want of notice to the mortgagee of any repudiation of her lien by the purchaser, a notice essential to an adverse possession, the opinion concludes: "The record presents no issue of either laches or estoppel. The evidence shows that the mortgage debt was kept alive by the mortgagor's recognition thereof, although more than 20 years had elapsed since its creation. Shockley v. Christopher, 180 Ala. 140, 60 So. 317. And whatever may have been the mortgagee's intentions as to the enforcement or abandonment of her claim, it does not appear that she has ever discharged the debt or released the land from the mortgage, or done anything to deceive Wise with respect to its existence. As already pointed out, she was not required to do anything in this regard except to register the mortgage for recordation. A purchaser who ignores such notice cannot visit his ignorance and loss upon the prior mortgagee."

This case is in effect a direct holding that the only duty of a mortgagee is to record his mortgage; that, this being done, a purchaser or junior mortgagee can acquire no greater interest than that of the mortgagor; that the presumption of payment after 20 years is available to neither, if kept alive by the payment of interest or other partial payments within the 20-year period.

Winner, Klein & Co. et al. v. First Nat. Bank of Laurel, Miss., 222 Ala. 57, 130 So. 900, opinion by Justice Sayre, is directly in point. Resort is had to the original record for a full understanding.

The bill was for foreclosure of a mortgage by the administrator of estate of a holder of the mortgage as devisee under the will of the original mortgagee. The mortgage was on record. Respondents were purchasers of the lands from a vendee of the mortgagor.

The bill disclosed the mortgage debt matured more than 22 years before the bill was filed.

The fifth, sixth and eighth grounds of demurrer were:

"5th. Said bill shows on its face that said mortgage indebtedness was due more than 20 years before filing of said bill.

"6th. Said bill shows on its face that the said Leo Winner, S. A. Klein, and Mrs. Sarah Meyer had constructive notice that the debt said mortgage was given to secure was presumed to have been paid.

"8th. For aught that appears from said bill there was nothing on the record of said mortgage in the Probate office showing the recognition of said debt since its creation."

The appeal was to review a decree overruling the demurrer.

The report of the case shows appellants relied in their brief upon Goodwyn v. Baldwin, supra, as authority for the proposition that respondents were protected by the presumption of payment.

The decision reads: "A presumption of the payment of a mortgage debt arises after the lapse of twenty years, nothing to the contrary appearing. Goodwyn v. Baldwin, 59 Ala. 127. But this presumption can avail appellant nothing, for the reason that the bill avers the fact to be that 'the interest on said debt having been regularly paid up to and including January 1st, 1926. That there is now due on said mortgage debt the principal sum of one thousand dollars, and interest thereon from, to-wit: the 1st day of January, 1926, to the present time [August 15th, 1929].' This averment clearly avoided the presumption of payment which, in its absence, would arise from the mere lapse of time."

Here is a clear-cut statement of the applicable law, the point being clearly raised.

Moreover, it is a direct interpretation by this court of the holding in Goodwyn v. Baldwin, hereinabove quoted.

Justice Sayre, with that case before him, and also with a citation of Coyle v. Wilkins, supra, as well as other cases, concluded the presumption of payment referred to in the closing words of Justice Stone was the same presumption defined in Coyle v. Wilkins. Justice Sayre does not differentiate the one case from the other, although the demurrer definitely raised the point. If Justice Stone had regarded the presumption of payment an absolute bar in the Goodwyn Case, would he not have so declared in unequivocal language? Instead, he points out the vague and indefinite averments of the bill intended to avoid the prima facie presumption of payment after the lapse of 20 years, and specifically notes that no pay-

ments were made on the mortgage for 30 years. In citing Coyle v. Wilkins, we think he intended to direct attention to the presumption therein defined, a rebuttable presumption, applicable to the case then in hand.

By statutes in force from our early history no acknowledgment will suspend the running of the statute of limitations save partial payments on the debt or an unconditional promise in writing. Code 1923, § 8964.

While this statute has not been applied to the equitable rule of repose, it does recognize part payments, the very thing the mortgage is intended to secure, as stronger evidence than mere declarations in recognition of the mortgage as a continuing security.

Nor do we question the wisdom of a holding that there is stronger reason for specific unequivocal averments of recognition where the bill is directed against a purchaser' who has no knowledge of what has occurred between the mortgagor and mortgagee, but the facts are within the knowledge of complainant. For like reasons' stronger and clearer proof of part payments may well be required where the mortgage is very old as in this case.

That the averments of the bill in the Goodwyn Case could not be strengthened by the fact that the mortgage remained unsatisfied on the record, which also disclosed a presumption of payment, is a correct holding, giving "presumption of payment" the meaning employed throughout our judicial history, viz.; absolute only in the event no recognition, such as part payments, was made within the 20-year period preceding the filing of the bill.

The cases in which the Goodwyn v. Baldwin Case has been cited disclose, so far as we have found, no citation as authority for the point now raised. On the contrary, with singular unanimity they emphasize that the presumption of payment, settlement of trusts, etc., does not obtain or is overcome, if there be part payments, or clear recognition of the trust etc., within the 20-year period.

Turning to other authority, research discloses that Hughes v. Edwards, 9 Wheat. 489, 497, 6 L.Ed. 142, is the leading case often quoted, cited, and followed by courts and text writers.

· That case, arising in Kentucky, was a bill to foreclose a mortgage some 23 years over due. Respondents were purchasers from the mortgagor without actual notice and had made valuable improvements on the property.

After dealing with the 20-year rule in that state as affecting redemption from a mortgagee in possession, the opinion proceeds:

"In respect to the mortgagee, who is seeking to foreclose the equity of redemption, the general rule is, that where the mortgagor has been permitted to retain possession, the mortgage will, after [same] length of time, be presumed to have been discharged, by payment of the money, or a release, unless circumstances can be shown sufficiently strong to repel the presumption, as, payment of interest, a promise to pay, an acknowledgment by the mortgagor that the mortgage is still existing, and the like. Now, this case seems to be strictly within the terms of this rule. The two letters from the mortgagor to the female plaintiff, in 1803 and 1808, admit that the mortgage was then subsisting, that the debt was unpaid, and they contain promises to pay it, when it should be in the power of the writer. In addition to these circumstances, credits were indorsed on the bond, for payments acknowledged to have been made, which, though blank, the court below ascertained to have been made on the 15th of January 1798, the 15th of May 1803, and the 2d of August 1808. The mortgagor, then, cannot rely upon length of time, to warrant a presumption that this debt has been paid or released, the circumstances above detailed having occurred from eight to thirteen years only prior to the institution of this suit.

"But it is insisted, that, although these acknowledgments may be sufficient to deprive the mortgagor of a right to set up the presumption of payment or release, they cannot affect the other defendants, who purchased from him parts of the mortgaged premises, for a valuable consideration. The conclusive answer to this argument is, that they were purchasers, with notice of this incumbrance. It must be admitted, that it was but constructive notice; but for every purpose essential to the protection of the mortgagee against the effect of those alienations, it is equivalent to a direct notice, and such is unquestionably the design of the registration laws of Kentucky. A purchaser, with notice, can be in no better situation than the person from whom he derives his title,

and is bound by the same equity which would affect his rights. The mortgagor, after forfeiture, has no title at law, and none in equity, but to redeem upon the terms of paying the debt and interest. His conveyance to a purchaser with notice, passes nothing but an equity of redemption, and the latter can, no more than the mortgagor, assert that equity against the mortgagee, without paying the debt, or showing that it has been paid or released, or that there are circumstances in the case sufficient to warrant the presumption of those facts, or one of them."

See, to like effect, Cook v. Union Trust Co., 106 Ky. 803, 51 S.W. 600, 45 L.R.A. 212; Kaiser v. Idleman, 57 Or. 224, 108 P. 193, 28 L.R.A.,N.S., 169, and extended note; First National Bank v. Woodman, 93 Iowa 668, 62 N.W. 28, 57 Am.St. Rep. 287; Murphy v. Coates, 33 N.J.Eq. 424; Barrett v. Prentiss, 57 Vt. 297; Mack v. Anderson, 165 N.Y. 529, 59 N.E. 289; Lynch v. Hancock, 14 S.C. 66. See, also, 19 R.C.L. p. 464, § 251.

In 2 Jones on Mortgages, 8th Ed., § 1540, the law is written: "A purchaser with actual notice of the mortgage, or constructive notice by means of a registry, can avail himself of the presumption of payment from lapse of time only when the mortgagor could avail himself of it under the same circumstances. The grantee succeeds to the estate and occupies the position of his grantor. He takes subject to the incumbrance; and his title and possession are no more adverse to the mortgagee than was the title and possession of the mortgagor. The purchaser is bound by the acts and declarations of the mortgagor in respect to the mortgage while he retains the equity of redemption or any part of it; as, for instance, the purchaser of a part of the mortgaged premises can not claim a presumption of payment of the mortgage from lapse of time when this presumption is repelled by payments of interest made by the mortgagor within twenty years, or by his admission within this time that the mortgage was then subsisting. A purchaser from the mortgagor stands in no better position than the mortgagor himself as to gaining title by possession and lapse of time, if the mortgage be recorded. The record is notice of the mortgage to a subsequent purchaser; and the mere fact that he has had actual possession under his purchase for the statute period of limitation is no bar to a foreclosure of the mortgage."

This statement of the law has run through earlier editions, which were followed by the courts. See Kaiser v. Idleman, 57 Or. 224, 108 P. 193, 28 L.R.A.,N.S., 176.

The same statement of the law in substance appears in 2 Jones Law of Real Property, §§ 1482, 1484.

5 Thompson on Real Property, contains an extended chapter on Recording Acts. Sections 4015, 4117, 4127, state the law in substance as the above-quoted authorities.

The text of 41 Corpus Juris, p. 557, § 514, contains the following: "Although one taking a deed or mortgage of land has no actual notice of a prior mortgage upon it, yet, if such mortgage is duly recorded at the time, he will be charged with notice of the existence and terms of the mortgage, and of the lien which it creates, and will take subject thereto, unless the mortgage has been canceled, released, or discharged on the record, or unless the mortgagee has in some way waived his rights or estopped himself to claim them, * * * the mortgagee may rest upon his rights under the recording acts; and he is under no obligation to give personal notice of his mortgage to one who purchases the premises from the mortgagor, even though such purchaser, having no actual notice of the mortgage, buys in the belief that the property is unencumbered and proceeds to erect improvements on the land."

48 Corpus Juris p. 691, § 199, defines the presumption of payment here involved thus: "The presumption of payment arising from lapse of time is one of fact, and differs essentially from the bar of the statute of limitations. This presumption is usually drawn from the evidence in support of the claim, and amounts to nothing more than a rule of evidence affecting the burden of going forward with the evidence on the issue of payment or non-payment."

And in § 200, p. 692, it is said: "The presumption prima facie obliterates the debt, and is conclusive in the absence of any evidence tending to show payment. It does not, however, create an absolute bar or conclusively extinguish the debt, and, indeed, the presumption does not arise, or is completely destroyed, where the fact of nonpayment is admitted or proved."

■ This overlong review of authorities has been made to demonstrate how universal is the rule that the constructive notice given

by the record of a mortgage is the same as actual notice of status of the mortgage as between the parties thereto, and that in the absence of some act or omission of legal duty on the part of the mortgagee misleading subsequent purchasers or mortgagees, operating on the principle of estoppel, such subsequent vendees or mortgagees take no better title or claim than was held by their vendor or mortgagor.

But it is now insisted that where the record discloses the mortgage is more than 20 years overdue, although not indorsed satisfied on the record, the presumption of payment should be held conclusive in favor of the junior mortgagee. That status has been often dealt with in the authorities above cited, or in close connection therewith.

By the great weight of authority the rule in such case is, that, while the junior mortgagee is charged with notice of the actual state of the title or lien of. the senior mortgage, if, in fact, more than 20 years have elapsed without payments of interest, or other recognition, so that foreclosure is barred as against the mortgagor when the junior mortgage is taken, the senior mortgagee and mortgagor may not thereafter revive the mortgage lien by renewal in any form, so as to reinstate it against the junior mortgagee.

Thus, in 2 Jones on Mortgages § 1540, immediately following excerpt above quoted, is the following: "But when a note and mortgage are once barred, although the mortgagor may, by a subsequent part payment, promise, or acknowledgment, revive the. mortgage, so far as it affects his own interest in the premises, he can not revive it as against his grantee, or any other parties who have acquired interest in the premises prior to such revivor."

Some states, like California and Arkansas, have enacted statutes requiring notice of extension or renewal to be entered on the record. These statutes proceed on the hypothesis that in the absence thereof the record of the mortgage is effective to protect the mortgagee so that no one can acquire from the mortgagor a better title than he has.

A full discussion of authorities sustaining the rule stated by Mr. Jones, and the import of these statutes is found in Kaiser v. Idleman, 57 Or. 224, 108 P. 193, 28 L.R.A., N.S., 169, and extended note, and Newhall v. Hatch, 134 Cal. 269, 66 P. 266, 55 L.R.A. 673, and note, 677 to 683. Summing up the rule on pages 683, 684, it is said: "First, that if the payment acknowledgment, promise, or other act which effects a renewal of the debt is made or done previous to the running of the statute of limitations against the debt, the subsequent encumbrancer or grantee taking the mortgaged property with notice of the existence of the mortgage takes it subject to the consequences of such renewal, i. e., the extension of the lien of the mortgage on the property; even though such subsequent encumbrancer or grantee was unaware, at the time, of the act of renewal; and, second, that if, either before or after the subsequent encumbrance or grant, the debt becomes barred by the statute, the lien of the mortgage is thereby extinguished; and while the debt may be renewed by the mortgagor as against himself, the lien of the mortgage, having been extinguished, cannot by any act of the mortgagor be renewed as against his subsequent encumbrancer or grantee."

In some states the lien is barred when the debt is barred. See, also, 5 Thompson Real Property § 4135.

We submit there is no logical basis for any stronger presumption in favor of one who invests in the property with constructive notice after the mortgage is 20 years overdue, than obtains in favor of an investor charged merely with constructive notice, who invests within the 20-year period, and remains unmolested, making improvements, etc., until the 20-year period has expired.

Here is a prospective investor in property on which the records show a mortgage more than 20 years overdue. He has notice of the presumption of payment, not a special presumption of payment in his favor, because he has never acquired an interest in the property; but a presumption of payment has arisen in favor of the mortgagor from whom he proposes to acquire title. The law charges him with knowledge of the rebuttable nature of such presumption. To say that in the face of such knowledge he can go ahead and invest and acquire a superior title to him who has already invested, is to write an exception into our recording statute which only the lawmakers are authorized to do; and which, we respectfully insist, is to favor one who wants to invest in property over him who has already done so, and shift to the latter the burden of taking action by foreclosure or otherwise, which the law does not require of him.

Our statute, Code 1923, § 9023, empowers a mortgagor, or his successor in title, judgment creditor, or junior mortgagee, to demand satisfaction of the record of a mortgage which has been paid, and imposes a penalty for noncompliance.

Why such penal statute? Because the record constitutes a cloud on the mortgagor's title.

Anyone seeing the record is charged with knowledge of this statute. Seeing the mortgagor has never caused it to be marked satisfied, suggests to a prudent man that inquiry be made. A prospective purchaser or mortgagee has but to require of the mortgagor, or other person in like position, that he cause the record to be satisfied, or furnish other satisfactory evidence that the recorded mortgage is satisfied before investing in the property. Else he takes his chances.

We are firmly convinced the rule of property in Alabama as elsewhere is that the record of a mortgage is constructive notice to everybody; that no one can acquire a better title from the mortgagor than he has; that the presumption of payment after 20 years is the same whether set up by the mortgagor or junior mortgagee; that so long as the mortgage is in fact a live security the holder is protected.

Rehearing denied.

ANDERSON, C. J., and GARDNER, BROWN, FOSTER, and KNIGHT JJ., concur.

THOMAS, J., dissents, upon grounds stated in his dissenting opinion.

THOMAS, Justice (dissenting on rehearing).

I am not in accord with the result announced. This suit is not between the original grantor and first mortgagee. If so, the result announced and rule applied would be that which I understand obtains.

It was a contest between the first and second mortgagee, which introduced the latter as a third party. The facts are thus stated in the opinion, Hendley et al. v. First National Bank of Huntsville, 234 Ala. 535, 176 So. 348, 349:

"In particular, the junior mortgagee challenges the senior mortgage as a subsisting lien upon the ground that the same is barred by prescription. Without dispute the senior mortgage was given some 40 years before the junior mortgage, and some 45 years before any rights were asserted in this cause by the holder of such senior mortgage.

"The mortgagor remained in possession until his death some 24 years after the maturity of the senior mortgage, and thereafter possession has been continuously held by his widow and heirs at law, who executed the junior mortgage."

The recording statute comes to us in substantial form from the Code of 1852, § 1268 et seq., to section 6853 et seq., Code.

The statute of limitation of 20 years, as to judgments from the Code of 1852, § 2475 to § 8942, and its satisfaction conclusively presumed after 20 years, Hughes v. Howell, 152 Ala. 295, 44 So. 410, 412; Henry v. State, 16 Ala.App. 670, 81 So. 190, and is one of our analogies to the rule of prescription which comes to us from the common law as stated at the time of Richard I. 2 Gr.Ev. §§ 537–546; 49 C.J. 1334, § 1.

I think we should consider the nature of prescription. In the recent decision of Oxford v. Estes, 229 Ala. 606, 611, 158 So. 534, 538, it is observed that:

"Prescription, as a bar to actions at law or in equity, is a rule of repose; aims at an end of controversies touching title to property; fixes twenty years as the absolute limit beyond which courts will not inquire; applies to express trusts which have lain dormant, unrecognized, and unasserted for twenty years; no disabilities, such as infancy, prevent or suspend the running of the twenty-year period. The rule is bottomed on the doctrine that demands unasserted for so long a time, either had no foundation in justice, or have been adjusted.

"Failure of memory, loss of evidence, death of parties, the probability that the whole truth cannot be ascertained and justice done, enter into the equation as a reason for the rule. It is not a presumption merely, but a rule of law, raising an absolute bar to ancient causes of action."

The reason for this rule is stated by Mr. Justice Foster in Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820.

The rule has long prevailed and been applied in this jurisdiction. McArthur v. Carrie's Adm'r, 32 Ala. 75, 70 Am.Dec. 529; Garrett v. Garrett, 69 Ala. 429; Matthews v. McDade, 72 Ala. 377. It is as to the lifting of the rule declared that no

disability shall extend the period beyond 20 years. Oxford v. Estes, supra; Greenlees v. Greenlees, 62 Ala. 330; Harrison v. Heflin, 54 Ala. 552.

The rule is again stated in Hendley et al. v. First Nat. Bank of Huntsville, 234 Ala. 535, 176 So. 348, 349, yet it asserts that the prescriptive period of 20 years begins to run in the various classes of cases when there ceases to be "recognition of a subsisting and continuing right or obligation," citing Braun v. Pettyjohn, 176 Ala. 592, 58 So. 907, 908; McArthur v. Carrie's Adm'r, 32 Ala. 75, 76, 89 et seq., 70 Am.Dec. 529; Harrison et al. v. Heflin, Adm'r et al., 54 Ala. 552, 553, 563; Coyle v. Wilkins et al., 57 Ala. 108, 111; Bailey et al. v. Butler, 138 Ala. 153, 156, 35 So. 111; Eliza Snodgrass v. John A. Snodgrass, 176 Ala. 276, 58 So. 201, and cases cited.

It will be noted that each case cited presented a controversy between the immediate parties at interest, or their privies in estate by law or by blood. The case of Braun v. Pettyjohn, supra, was for foreclosure of a mortgage on lands, recognized by mortgagors and affecting the immediate vendee.

In Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201, the title for accounting was by beneficiaries and for an accounting of trust estate which was held to run from last acknowledgment of the trust as a liability by such trustee or personal representative. Such was the finding in the cases of Courson et al. v. Tollison, 226 Ala. 530, 147 So. 635; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820, 822; Fairclough v. St. Amand, 217 Ala. 19, 114 So. 472; Cook v. Castleberry, 233 Ala. 650, 173 So. 1; Bailey v. Butler, 138 Ala. 153, 35 So. 111; Coyle v. Wilkins et al., 57 Ala. 108; Harrison et al. v. Heflin, Adm'r, 54 Ala. 552.

In the case of McArthur v. Carrie's Adm'r, 32 Ala. 75, 70 Am.Dec. 529, detinue for slaves was involved. The holding was that proof of the uninterrupted adverse possession of personal property for 20 years raises a prima facie presumption of title and ownership, which can only be overturned by proof showing that such possession is not inconsistent with the plaintiff's right, or explaining and excusing the long acquiescence on some other ground than original defect of title in the possessor. This opinion by Chief Justice Stone is carefully considered and the relevant authorities collected and discussed. This case does not appear to be an authority that supports the contention made in the instant case as would withdraw the right and protection of a third party from the influence of the rule of prescription, or that of the presumption of payment or settlement.

It is believed that this distinction is recognized in Cook v. Castleberry, 233 Ala. 650, 173 So. 1, 4, wherein it is observed: "One of our earliest cases on that subject is Blackwell's Adm'r v. Blackwell's Distributees, 33 Ala. 57, 70 Am.Dec. 556. It was held that when the trustee holds, not in his own right, but in subordination to and recognition of the rights of the cestui que trust, the presumption of settlement from lapse of time is repelled and the bar is not perfected until after twenty years from the time when settlement should have been made. Whetstone v. Whetstone's Ex'rs, 75 Ala. 495; Werborn v. Austin, 82 Ala. 498, 8 So. 280. The doctrine of repose after twenty years extends from the last clear recognition of the trust relationship. Garrett v. Garrett, 69 Ala. 429; Courson v. Tollison, 226 Ala. 530, 147 So. 635."

Such was the case in Wilkerson v. Wilkerson, supra. No rights of third parties had intervened. The reason for the rule is again stated, as follows, in the last-cited case:

"In Snodgrass v. Snodgrass, 176 Ala. 276, 280, 58 So. 201, 202, that 'the consensus of opinion in the present day is that such presumption is conclusive,' and quoting from an earlier case, 'the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, "and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible." '
* * *

"The rule now creates a conclusive bar, Roach v. Cox, supra [160 Ala. 425, 49 So. 578, 135 Am.St.Rep. 107]; Oxford v. Estes, 229 Ala. 606, 158 So. 534, and is not affected by the circumstances of the situation, that is to say, whether truth and justice are thereby obscured, or by the death

of parties or destruction of testimony, and conduct based upon the apparent situation, or the age, state of mind, or status of responsibility. These are circumstances which are considered in respect to laches but not prescription."

And in Courson v. Tollison, 226 Ala. 530, 147 So. 635, 637, the same justice, writing for the court, made the following sound observation: "It is clear that the rule of repose or staleness of demand by prescription in such situation is 20 years from the 'last item on the guardian's account, * * * or other clear recognition of the guardianship.' Garrett v. Garrett, 69 Ala. 429; Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201; Patterson v. Weaver, 216 Ala. 686, 114 So. 301; Rhodes v. Turner, 21 Ala. 210. But, though 20 years may have not expired, a claim will not be enforced in equity due to laches 'where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult, if not impossible, to do justice, the plaintiff will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied.' "

This is sufficient to illustrate the nature and justice of the long prevailing rules of prescription, repose and laches.

In 41 Corpus Juris p. 503, § 431, under the title of "Duration of Lien" it is declared, that "The lien of a mortgage, once attached to land, continues in force until the mortgagee has received payment or satisfaction of the debt secured, unless he previously releases it, or a merger takes place by his acquisition of the legal title to the property mortgaged, or until the debt has become barred by the statute of limitations, (citing many authorities) or the mortgagee's interest defeated by an adverse possession, well founded and continued for the necessary time."

It is well observed in the original opinion that it is the right of the mortgagor and mortgagee to let a mortgage run as long as they wish. This, however, does not apply to, or should not be taken to effect a third person, who acquired his rights under the bar of the doctrine of prescription, or under the rule of presumption of payment or settlement after 20 years. The rule announced in the original opinion is to the contrary, and there is nothing in the recordation statute to this unjust effect, or to put the important question to the hazard of parol evidence after the period of 20 years from the due date of the mortgage.

In the case of Elsberry v. Boykin, 65 Ala. 336, the issue by way of defense was the statute of limitations of 10 years, staleness of the complainant's demand of the non-delivery of the mortgage. The court said: "The mortgage being duly recorded, the registration operated as notice to subsequent purchasers, or mortgagees; and *they could avail themselves of the statute of limitations as a bar to a foreclosure, only under the same circumstances,* which would be available to the mortgagor. There is no room, under the facts shown, upon which the subsequent mortgagee can invoke the benefit of the statute of limitations. If the mortgagor had remained in possession, not disclaiming the title of the mortgagee—not asserting a possession inconsistent with, and hostile to that title, so openly and notoriously that knowledge of it would be imputed to the mortgagee—it could not be insisted that the possession was not subordinate to the mortgage, and that the mere delay of the mortgagee to enter, or to foreclose, would afford room for the operation of the statute."

This is not the rule of the case set out above, under the undisputed facts. This case is governed by the doctrine of prescription, or rule for the protection of the rights of innocent third parties, who may act on the bar of that salutary rule of settlement, and who would be prejudiced by an unreasonable extension of the rule of constructive notice of recorded mortgage beyond that given other liens.

The facts of the Elsberry v. Boykin Case, supra, were that the mortgage was given by B. H. Elsberry to Frank Boykin on October 16, 1867, for moneys alleged to have been loaned on November 1, 1866; that complainant, mortgagee, did not learn of the execution or existence of the mortgage until after the death of the mortgagee in August, 1869; that the note for the debt was destroyed when complainant's house was burned and the mortgage was never in the possession of Boykin, the mortgagee, and it is alleged that mortgagor continued in the possession of the lands till his death, his widow thereafter until she surrendered possession in 1871 or 1872 to A. F. Elsberry, who claimed under conveyance from mortgagor subsequent to complainant's mortgage.

The answer by the grantee, in the Elsberry Case, denied delivery, the fact of loan or debt, saying the mortgage when recorded was merely for purpose of delaying creditors.

The respondent pleaded the statute of limitations for 10 years and staleness of demand and demurred to the bill because of the facts that appeared on its face, which showed the instrument set up as a mortgage had never been delivered. Answer by other defendants was to the effect that execution and validity of the complainant's mortgage was denied and pleading the statute of limitations of 10 years, demurring to the bill for want of equity. The chancellor overruled the demurrer and the plea and held that the complainant was entitled to relief, citing the case of Burt v. Cassety, 12 Ala. 734, as conclusive on the question of delivery. From this decree the defendant appealed and assigned error. Said decree was as follows:

"It is insisted by solicitors of respondent Elsberry that the mortgage sued on by complainant was never delivered by the mortgagor and accepted by Boykin, and is therefore no deed as against said respondent's title.

"They are sustained by some of the authorities cited. But, of course, this Court must be governed by the decisions of our own Supreme Court. It appears to the Court that if the facts set forth in the case of Burt v. Cassety, 12 Ala. 734, were sufficient to establish the delivery and acceptance of the deed, then the facts in this case show a delivery of the mortgage to Boykin. The Court feels constrained to hold that complainant is entitled to relief. The matter is referred to the Register to ascertain and report the amount due complainant." Supreme Court Record, 578, pp. 159, 160.

When the facts of the Elsberry v. Boykin Case, supra, are understood, it was a family affair, evidenced by the statement of facts, and the issue was not that now before us. That case is not decisive of the question of rights of a third party under the rule of prescription and the pertinent facts before us. Goodwyn et al. v. Baldwin et al., 59 Ala. 127, Mr. Justice Stone reaffirmed McArthur v. Carrie's Adm'r, 32 Ala. 75, 70 Am.Dec. 529, and Coyle v. Wilkins et al., 57 Ala. 108, saying that if parties allow 20 years to elapse without taking any steps to compel a settlement, or to assert rights of property, the presumption of payment, or

settlement of the disputed title, arises. He concludes his discussion by saying: "If, by the registration of the mortgage they were constructively notified of the lien and incumbrance it created, it also notified them by its date and age that the law presumed the payment of the debt it was given to secure. See Coyle v. Wilkins, supra."

It would appear that this authority is decisive of the question to the contrary result from that reached and announced on the original hearing in the case at bar.

The case of Graham v. Graham, 202 Ala. 56, 79 So. 450; Id., 205 Ala. 644, 89 So. 25, 26, was a bill by two of six children and heirs at law of Mildred R. Graham, deceased, against the other heirs, praying for sale of lands for partition and involved a mortgage made by Sims, as trustee, to secure alleged indebtedness of $10,000 to the wife of grantors. It is stated, Graham v. Graham, 202 Ala. 56, 59, 79 So. 450, 453: "The question raised by this alternative turns upon the legal intendments of the situation as between mortgagor and mortgagee in joint possession, residing together upon the mortgaged property as man and wife, for more than 30 years. We take account, of course, of the averments as to the nature of the possession during this time. * * * The doctrine that payment is presumed after the lapse of 20 years is available to the mortgagor who holds in subordination to the mortgage. Relfe v. Relfe, 34 Ala. 500, 73 Am.Dec. 467. And the presumption of payment after 20 years, without recognition of liability is conclusive. Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201, and cases cited. We conclude, therefore, that complainants (appellees) have by their alternative averment shown no title or interest in the Autauga lands."

Thus did that decision proceed between the parties and as bound privies in estate. Graham v. Graham, 202 Ala. 56, 79 So. 450.

In the second appeal, it is observed:

"On a former appeal in this case (Graham v. Graham, 202 Ala. 56, 79 So. 450), it was held, upon the allegations of the original bill, that the deed of trust executed by William A. Graham, Sr., in 1875, to his wife, Mildred A. Graham, through the medium of Sims, as trustee, had never ripened into a title in Mildred A., but remained a mortgage security merely, the payment or satisfaction of which would be presumed, as a matter of law, from the lapse of more than 20 years after the law day thereof without any countervailing recognition of

the existence of the debt, by payments thereon or otherwise, on the part of the mortgagor husband. From this view of the allegations of the bill, it resulted that the action of the trial court in overruling the demurrer to the bill was held erroneous, and the demurrer was sustained as to both alternatives of the bill, viz., as a claim of title in the heirs of Mildred A., and as a claim for an unpaid debt secured by the mortgage in question. * * *

"A majority of the court * * * are of the opinion that the evidence fails to show that the possession of the land was held by Mrs. Graham, or by her husband for her, and that the principles of law stated by the court on the former appeal are still applicable and of controlling effect. The conclusion is that the mortgage debt and title of Mrs. Graham were presumptively extinguished by the lapse of more than 20 years after the law day, without recognition thereof by the mortgagor, and that at the time of Mrs. Graham's death in 1908 the fee-simple title was vested in Mr. Graham, her husband." Graham v. Graham, 205 Ala. 644, 646, 89 So. 25, 26.

The effect of the ruling in Shockley v. Christopher, 180 Ala. 140, 60 So. 317, is that "limitations do not run against the foreclosure of a mortgage, nor will delay furnish a defense thereto until the lapse of such time that there is a presumption that the debt was satisfied; that period ordinarily being twenty years, in the absence of adverse possession." Bailey v. Butler, 138 Ala. 153, 35 So. 111.

On the second appeal, Christopher v. Shockley, 199 Ala. 681, 75 So. 158, the statement of fact was to the effect that Mrs. Christopher was informed by Shockley of his sale of the lands to Wise in 1898 and during the years 1899, 1900, and 1901 she passed by the place, which was then occupied by Wise as his residence, the house being within 50 yards of the roadway, and, on such appeal, the observation is made that, whatever may have been the mortgagee's intention as to enforcement or abandonment of her claim, it does not appear that she has ever discharged the debt or released the lands from the mortgage or "done anything to deceive Wise with respect to its existence." And it is further observed, "She was not required to do anything in this regard except register the mortgage for recordation and a purchaser who ignores notice cannot visit his ignorance and thus bar the prior mortgagee."

In Gay v. Fleming, 182 Ala. 511, 62 So. 523, 524, Mr. Justice Anderson observed for the court, "If parties allow 20 years to elapse without taking any steps to compel the settlement of a mortgage debt, or to assert rights of property, the presumption of payment or settlement of the disputed title arises"—citing Goodwyn v. Baldwin, 59 Ala. 127, and Bailey v. Butler, 138 Ala. 153, 35 So. 111. The suit in ejectment was within the bar.

In Ohmer v. Boyer, 89 Ala. 273, 278, 7 So. 663, 665, the holding was that foreclosure or enforcement of a mortgage is not barred by lapse of time less than 20 years, in the absence of an actual adverse possession by the mortgagor, or those claiming under him, brought home to the knowledge of the mortgagee; and the same limitation applies to an equitable assignee, who, having paid the debt, seeks to be subrogated to the rights of the mortgagee, as against the heirs of the mortgagor.

Mr. Justice Somerville observed, "This claim, as we have said, is based on the sole fact that the defendants, who stand in the shoes of their testatrix, have become the equitable assignees of the mortgage security. Against the enforcement of a mortgage no period of time will avail as a bar less than 20 years, in the absence of an actual possession by the mortgagor, or those claiming under him, adverse to the mortgagee, and brought home to his knowledge. 3 Brick.Dig. p. 622, § 303. And an equitable assignee has the same period of time in which to assert his claim in a court of equity as his assignor had, unless some special circumstances of the case call his diligence into extraordinary activity, so as to charge him with *laches*."

Adverting to the case of Braun v. Pettyjohn et al., 176 Ala. 592, 58 So. 907, 908, where the immediate interest of the parties was concerned, the court concluded the discussion by the observation that the bill was filed before the expiration of the 20 years from the date of the mortgage, and subsequent to the time when the mortgage was executed, and that there was a distinct acknowledgment and recognition of the mortgage in the deed from Braun to Pettyjohn, who received the property with that recognition of the mortgage as a lien. It is true that in this opinion Mr. Justice Simpson observed, "as the period of 20 years had not expired since the last distinct recognition of the mortgage, and not even since the execution of the mortgage itself, the rights of

the complainant were not affected by the lapse of time." As we understand this case, therefore, it is not an authority as against a third party, and the rule of presumption of the payment of the debt after 20 years, on which such party would have the right to rely until he had some other knowledge or notice than that of the mere recording of the same, obtains.

If it is necessary to consider other or earlier cases, it is observed in Black v. Pratt Coal & Coke Co., 85 Ala. 504, 511, 5 So. 89, 94, that a presumption that any and all claims or rights of property which have been permitted to "slumber without assertion or recognition for 20 years have no legal existence, or have been adjusted."

In Harrison v. Heflin, 54 Ala. 552, after 20 years, it is observed, there was the presumption of payment to distributees favoring a surety on bond of personal representative; and in the case of Garrett v. Garrett, 69 Ala. 429, the presumption of payment was indulged between guardian and ward.

In the case of Solomon v. Solomon, 83 Ala. 394, 3 So. 679; Id., 81 Ala. 505, 1 So. 82, the bill was by heirs to enforce a vendor's lien and the decision was rested "on the presumption of payment" due to the lapse of 20 years.

In Cook, Adm'r, v. Parham & Blunt, 63 Ala. 456, Mr. Chief Justice Brickell observed that a mortgage will not be presumed to be satisfied, merely from the lapse of 20 years before filing a bill to foreclose it, *when partial payments were made on the debt, and it was reduced to judgment before the lapse of 20 years.* The justice further stated: "There is no room for a presumption of payment of this debt. Judgment was obtained upon it in less than twenty years after its maturity, and payments were made upon it, which repel such a presumption, though more than twenty years had elapsed before the filing of the cross-bill to foreclose it. The judgment having been rendered before the mortgage to the appellees, they are bound by it as privies of the mortgagor. McLelland v. Ridgeway, 12 Ala. 482; Crutchfield's Heirs v. Hudson, 23 Ala. 393. It was conclusive of the rights of the parties, and fully determined all defenses, whether of prior payments or otherwise, which could have been urged against the debt. Mervine v. Parker, 18 Ala. 241; Burt v. Hughes, 11 Ala. 571; De Sylva v. Henry, 3 Port. 132."

In Spencer v. Hurd, 201 Ala. 269, 77 So. 683, 684, 1 A.L.R. 761, Mr. Justice Gardner stated:

"Under the decisions of this court, and under the fact presented, the mortgage will be conclusively presumed to have been satisfied. Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201; Bailey v. Butler, 138 Ala. 153, 35 So. 111; Shockley v. Christopher, 180 Ala. 140, 60 So. 317; Goodwyn v. Baldwin, 59 Ala. 127; Loper v. Dickey, 190 Ala. 554, 67 So. 255; Gay v. Fleming, 182 Ala. 511, 62 So. 523; Roach v. Cox, 160 Ala. 425, 49 So. 578, 135 Am.St.Rep. 107; Harrison v. Heflin, 54 Ala. 552; Greenlees v. Greenlees, 62 Ala. 330; Gayle v. Pennington, 185 Ala. 53, 64 So. 572; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124.

"In Snodgrass v. Snodgrass, supra, it was pointed out that this prescriptive period of 20 years is rested upon the principle of repose of society, and is a matter of public policy; that antiquated demands will not be considered by the court for there must be a time beyond which human transactions will not be inquired into. It was there said: 'The consensus of opinion at the present day is that *such presumption is conclusive,* and the period of 20 years, without some distinct act in recognition of the trust, a complete bar.'"

In Butt et al. v. McAlpine, 167 Ala. 521, 530, 52 So. 420, 423, Mr. Justice McClellan said: "But the presumption with which we are concerned does not depend upon the action or inaction of the bona fide claimant of the title itself, unless such action or inaction is infected with fraud or deception. The shoe is on the other foot—that of the beneficiary. He it is who must first move, unless excused by fraud or deception avoiding the imputation of his lack of diligence. The principle cannot be so different as to deny the influence of the analogy of an inactive mortgagee out of possession. In such case, after 20 years of inactivity to enforce undoubted (originally) right, the mortgagee cannot prevail."

We have indicated that the contrary rule prevails to that contained in the original opinion, and, at the risk of repetition, we believe it may be said that the law of Alabama for more than 60 years, as shown by the opinion of Mr. Justice Stone in the case of Goodwyn v. Baldwin, 59 Ala. 127, has become a rule of property. *This case directly involved the question presented in the Hendley Case.* The court applied the presumption of payment arising after 20 years. An effort was made to avoid the presumption by introducing evidence of admissions of the indebtedness. The court

said these were vague and indefinite, but decided the case upon another proposition of law. The court said: "By a much stronger reason is it insufficient to charge his vendees, who are impliedly admitted to be purchasers for value actually paid, and who are no where charged to have had knowledge that Raoul 'admitted the existence of said mortgage as a valid incumbrance on said lands.' If, by the registration of the mortgage they were constructively notified of the lien and incumbrance it created, it also notified them by its date and age that the law presumed the payment of the debt it was given to secure."

Goodwyn v: Baldwin, supra, has been cited with approval in the following cases: Philippi v. Philippi, 61 Ala. 41, 47; Glenn's Adm'r v. Billingslea, 64 Ala. 345, 355; Baker v. Prewitt, 64 Ala. 551, 555; Garrett v. Garrett, 69 Ala. 429, 431; Sullivan v. Lawler, 72 Ala. 74, 76; Solomon v. Solomon, 81 Ala. 505, 507, 1 So. 82, 83—defense raised by subpurchasers on demurrer; Solomon v. Solomon, 83 Ala. 394, 396, 3 So. 679, 680; Semple v. Glenn, 91 Ala. 245, 261, 6 So. 46, 47, 9 So. 265, 24 Am.St.Rep. 894; Jackson v. Elliott, 100 Ala. 669, 672, 13 So. 690, 692; Bailey v. Butler, 138 Ala. 153, 156, 35 So. 111, 112; Shockley v. Christopher, 180 Ala. 140, 142, 60 So. 317; Gay v. Fleming, 182 Ala. 511, 515, 62 So. 523, 525; Spencer v. Hurd, 201 Ala. 269, 77 So. 683, 684, 1 A.L.R. 761; Graham v. Graham, 205 Ala. 644, 649, 89 So. 25, 30; Winner, Klein & Co. v. First Nat. Bank, 222 Ala. 57, 130 So. 900; Philippi v. Philippe, 115 U.S. 151, 157, 5 S.Ct. 1181, 29 L.Ed. 336, 340.

The last-cited case by this court, Philippi v. Philippi, 61 Ala. 41, 47, was approved by the Supreme Court of the United States, Philippi v. Philippe, 115 U.S. 151, 157, 5 S. Ct. 1181, 1184, 29 L.Ed. 336, 340. The Supreme Court of the United States made the following observation of the statutes, the same as our present statutes, Code of 1923, §§ 6860, 6887 and 8941 et seq.:

"The rule applicable to cases of this kind has been declared by the supreme court of Alabama, in the case of Nettles v. Nettles, 67 Ala. 599, to be as follows: 'It is true, as a general rule, that when the relation of trustee and cestui que trust is uniformly admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, lapse of time can constitute no bar to relief. But when the trust relation is repudiated, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief on the ground of lapse of time, and its inability to do complete justice.' See, also, Goodwyn v. Baldwin, 59 Ala. 127; Philippi v. Philippi, 61 Ala. 41; Maury's Adm'r v. Mason's Adm'r, 8 Port. 211; Lansdale v. Smith, 106 U.S. 391, 1 S. Ct. 350, [27 L.Ed. 219]. * * *

"The longest period prescribed by the law of Alabama within which actions may be brought is 20 years. Code Ala. 1876, sections 3223 to 3231, inclusive. And by the provision of section 3758, the same limitations apply to suits commenced by bill in equity.

"It is well settled by the decisions of the supreme court of Alabama that, even in the absence of a statute of limitations, if 20 years are allowed to elapse from the time at which proceedings could have been instituted for the settlement of a trust without the commencement of such proceedings, and there has been no recognition or admission within that period of the trust as continuing and undischarged, a presumption of settlement would arise operating as a positive bar. Rhodes v. Turner, 21 Ala. 210; Blackwell's Adm'r v. Blackwell's Distributees, 33 Ala. 57 [70 Am.Dec. 556]; Worley's Adm'x v. High's Adm'r, 40 Ala. 171; Ragland's Ex'rs v. Morton, 41 Ala. 344 [91 Am.Dec. 516]; Harrison v. Heflin, 54 Ala. 552; Greenlees v. Greenlees, 62 Ala. 330; McCarthy v. McCarthy, 74 Ala. 546.

"The same general rule has been laid down by this and other courts as the settled law of equity jurisprudence. Elmendorf v. Taylor, 10 Wheat. 152 [6 L.Ed. 289]; Bowman v. Wathen, 1 How. 189 [11 L.Ed 97]; Wagner v. Baird, 7 How. 234 [12 L.Ed. 681]; Kane v. Bloodgood, 7 Johns.Ch. [N. Y.] 90 [11 Am.Dec. 417]; Hovenden v. Lord Annesley, 2 Schoales & L. 636; Marquis of Cholmondeley v. Clinton, 2 Jac. & W. 138. These authorities are pertinent and conclusive of the present case."

This rule of "presumption of payment" in general is discussed and authorities collected in 1 A.L.R. 781–789, and in this court in Snodgrass v. Snodgrass, 176 Ala. 276, 280, 58 So. 201, and other cases we have cited herein.

Goodwyn v. Baldwin, supra, was necessarily a construction of the recording statute which was in force when the mortgage was recorded in May, 1844, on its effect of giving notice to subsequent purchasers.

The decision reads into the statute the well-established rule of law that after the lapse of 20 years from the maturity of the debt secured by the mortgage the debt is presumed to be paid. Goodwyn v. Baldwin, supra, was decided in 1877, and the judges no doubt had before them section 2153 of the Code of 1876, which is identical with section 1543 of Code of 1867, and section 1274 of Code of 1852. Since then the Legislature has readopted, without change, this section as section 1797 of the Code of 1886, section 991 of the Code of 1896, section 3373 of the Code of 1907, and section 6860 of the Code of 1923.

The re-enactment of a statute which has been judicially construed is an adoption of the construction, unless a contrary intent clearly appears.

"Such construction must be accepted as a part thereof," Mr. Justice Gardner said in Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 161 So. 473, 475.

"We * * * feel bound by the re-enactment of the statute with that construction" observed Mr. Justice Foster in Alabama Produce Co. v. Smith, 227 Ala. 330, 150 So. 148, 149; and again in Browder v. Gunter, 220 Ala. 407, 125 So. 646, 648, Mr. Justice Foster said, by such readoption of the statute, "the opinion has therefore become a fixed interpretation."

"The re-enactment of the statute without change may be treated as a legislative approval of the departmental construction of the statute, quite as persuasive as the re-enactment of a statute, which has been judicially construed." Such was the observation of Mr. Justice Bouldin in State v. Hobbie Grocery Co., 225 Ala. 151, 142 So. 46, 47. Again in Allison, etc., Co. v. Sommers, 219 Ala. 33, 121 So. 42, 44, Mr. Justice Bouldin observed, "Such rule must be regarded as the settled law of this state."

In Bank of Columbia v. McElroy, 231 Ala. 454, 165 So. 105, 107, Mr. Justice Brown said, "The repeated recodification of this statute and its readoption without change, other than those noted, clearly indicate a legislative purpose to confirm that interpretation." In Spooney v. State, 217 Ala. 219, 115 So. 308, 310, the same justice made the following observation: "The statute now speaks in the light of its previous interpretation which has become a part of it by legislative adoption." And again in Bennett v. Bennett, 224 Ala. 335, 140 So. 378, 379, the same justice said, "This forecloses further controversy as to their interpretation and effect."

In Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377, 379, Mr. Justice Somerville, applying the rule, observed: "This court has uniformly recognized" this rule "for nearly three-quarters of a century."

The rule was applied by Mr. Justice Knight in Alabama, etc., Corp. v. Winters, 234 Ala. 566, 176 So. 183, in giving effect to constructions by courts of a sister state prior to adoption of the act by this State.

And the Chief Justice, in Bruce v. Sierra, 175 Ala. 517, 57 So. 709, 710, Ann.Cas. 1914D, 125, said: "Whether this was or was not the proper construction of the statute originally, we cannot now decide, as it was brought forward in the succeeding Codes as so construed, unchanged."

In reviewing decisions of courts in other jurisdictions, we find among other cases an opinion by Mr. Justice Taft (while a Circuit Judge) that an old mortgage, 51 years old, and more than 30 years past due, was not an encumbrance on the property, and that the general presumption of payment arising after the mortgage is 20 years past due prevents the title from being unmarketable. New York Life Ins. Co. v. Lord, 6 Cir., 100 F. 17, 23. The same rule is laid down by the Supreme Court of Ohio in Rife v. Lybarger, 49 Ohio St. 422, 31 N.E. 768, 17 L.R.A. 403.

If a title is "marketable" notwithstanding such old uncanceled mortgages being of record and parties forced to consummate contracts to buy, surely purchasers can rely on the presumption of payment as was said by Mr. Justice Stone in Goodwin v. Baldwin, supra.

The rule as laid down in Goodwyn v. Baldwin, supra, works no hardship on either mortgagor or mortgagee. If a mortgage is not paid at maturity, then the mortgagee can easily record a "renewal document," as is frequently done in actual practice. If the mortgage has not been paid and no renewal document has been recorded, then should not a mortgagee be permitted to hold out to the world "a presumption that the debt has been paid?" If a mortgagee, by positive words, induces a subsequent purchaser, or mortgagee, to act to his harm, then the law estops the deceitful mortgagee from asserting the validity of the mortgage. Likewise, there should be some penalty against a mortgagee who, knowing that his conduct raises a presumption that he has been paid, takes no steps to warn subsequent purchasers. The doctrine of Goodwyn v. Baldwin, supra, gives

this penalty whenever the rights of purchasers have intervened, by protecting the purchaser without actual notice.

A careful reading of the cases will draw this distinction: As between mortgagor and mortgagee, 20 years will raise a rebuttable presumption of payment, although some cases say the presumption is "conclusive." However, as between mortgagee and a purchaser from the mortgagor, without actual notice of partial payments, the recording statute will not charge the subsequent purchaser with constructive notice of subsequent payments that might possibly have kept the mortgage alive.

In Spencer v. Hurd, 201 Ala. 269, 77 So. 683, 684, 1 A.L.R. 761, Mr. Justice Gardner examined carefully Goodwyn v. Baldwin, supra, and said: "From this settled policy we decline to now depart. It has become, as it were, a rule of property in this state, tends to the repose of society, and the quieting of litigation." Incidentally, Spencer v. Hurd, supra, shows how Goodwyn v. Baldwin, supra, repudiates the argument that consideration should be made of the fact that mortgagor and mortgagee might be "friends and neighbors," as was given great weight in the opinion in the Hendley Case. See Burns v. Burns, 228 Ala. 61, 152 So. 48.

If there is no debt, there is no mortgage, Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463; Drum & Ezekiel v. Bryan, 193 Ala. 395, 69 So. 483; and it follows that the presumptions that obtain as to the debt would likewise obtain as to the mortgage, whether recorded or not.

Considering, therefore, the rule coming to us from the common law, and the presumption that obtains, after the expiration of 20 years from the due date of the recorded mortgage of payment of the debt, and the rule of no debt no mortgage, third parties had the right to act on the presumptions that obtain, and, without other knowledge or notice, are protected as bona fide purchasers.

A careful consideration of the cases of Christopher v. Shockley, supra, and Goodwyn v. Baldwin, supra, will indicate, as we now propose to show, that these decisions do not in any way conflict with one another.

In the Christopher Case, the mortgage was made by Shockley in April, 1888, and recorded May, 1888 (maturity of debt not being shown by the report of the case). Wise bought from Shockley in December, 1898. The mortgage was then only 11 years old. Undoubtedly in 1898 the record charged Wise with constructive notice, being the equivalent to actual notice. At that time there was no presumption of payment, as 20 years had not elapsed. The only defense Wise could assert was "adverse possession" and this could not be proven. Such was the defense and failure, as we have shown above, which was dealt with in the opinion. The case of Goodwyn v. Baldwin, supra, did not apply to the Christopher Case. The doctrine of that case would have been applicable *if* Wise had bought *after the mortgage was 20 years past due.* If 20 years had elapsed before the purchase, then Wise would take with notice of the presumption of payment, and not have been charged with notice. But, having purchased when the mortgage was only 11 years old, the fact that the foreclosure suit was brought after the mortgage was 20 years old, Wise was in the position of having only a rebuttable presumption in his favor, arising from lapse of time after the purchase. *There was no presumption of payment at the time he purchased.* This is a decisive and distinct point between the two decisions.

In the Hendley Case the mortgage was made by Thomas W. Townsend in 1889. Townsend died 24 years after the date of the mortgage. *In 1921, 1930, and 1931, his widow and heirs made mortgages to the Huntsville Bank.* It will, therefore, be seen that, when the bank acted, the presumption of payment had come into existence by the lapse of 20 years. Under these facts, the principle of Goodwyn v. Baldwin, supra, is directly applicable to the instant case.

And may I be permitted to say again that the Christopher Case by Mr. Justice Somerville is not in conflict with the Goodwyn v. Baldwin Case, supra, by Mr. Justice Stone.

By whatever application the efficacious rules may be called under particular facts (limitations, laches, prescription, or the presumption of payment or settlement from lapse of time), it is sufficient, after the prescribed period or warranting facts, to protect an innocent third party against frauds, perjuries, and unreasonable delays in the assertion of an antagonistic claim or right. The reason for the rule of the presumption of payment, from lapse of time, is well stated by the Supreme Court of Delaware in the case of De Ford v. Green, 1894, 1 Marv. 316, 40 A. 1120, 1122, as follows:

"This rule is founded on the common experience of the conduct of men in relation to the transaction of business, and was intended for the security and repose of society, by discouraging suits for stale demands, and discouraging the laches and negligence of parties, in delaying to prosecute their claim for an unreasonable length of time, when they had the means and opportunity of enforcing them. This rule was also intended for the protection of the debtor, whose receipts or vouchers may perhaps be lost, or witnesses be dead or removed, or the true state of the transaction be otherwise obscured by the lapse of time. It is better for the peace and repose of society, and the ends of justice, that the presumption arising from the lapse of time should be adhered to, and not be easily rebutted, although in many cases it may be contrary to the actual truth."

Such is the decision in the case of Goodwyn v. Baldwin, supra.

We have indicated that our decisions are harmonious when rightly understood and that there is nothing to qualify or overrule.

The case of Winner, Klein & Co. et al. v. First Nat. Bank of Laurel, Miss., 222 Ala. 57, 130 So. 900, is in line with our construction of Goodwyn v. Baldwin, supra. It will be noted that the suit was inter partes and was for foreclosure of a mortgage averred to have been executed by appellant Winner, Klein & Co.'s predecessors in title. Appellee avers its right as that of administrator with the will annexed of Jennie P. Kirkland, deceased, who had survived her husband, D. L. Kirkland, mortgagee, by whom the land in suit had been devised to her. The observation is made by Mr. Justice Sayre that the "presumption of the payment of a mortgage debt arises after the lapse of twenty years, nothing to the contrary appearing," on the authority of Goodwyn v. Baldwin, supra; that this presumption cannot avail appellant for the reason that the bill avers the fact to be that the interest on said debt had been paid up to and including January 1, 1926; that there was now due on the said mortgage debt the principal sum and interest. The opinion then proceeds: "This averment clearly avoided the presumption of payment which, in its absence, would arise from the mere lapse of time." Such were the facts in the case under consideration, which bring this decision in line with the application of the presumption of payment and settlement under the authorities we have cited.

That such are the facts is apparent from the averments of the original bill, which reads, in part, as follows:

"That on towit: the 14th day of March, 1921, the said W. R. Wallace and wife, Vivian Wallace, did sell and convey the said land to W. T. Wallace by deed recorded in Deed Book 37, at page 163, and *in said deed recognized the existence of said mortgage debt.* (Italics supplied.)

"That on towit: the 13th day of April, 1921, the said W. T. Wallace and his wife did sell and convey said land to Winner, Klein & Company, reputed in said deed to be a partnership composed of Leo Winner, S. A. Klein and Mrs. Sarah Meyer, by deed recorded in Deed Book 37, p. 298, in the Probate Office of Sumter County, Alabama.

"That the indebtedness secured by said mortgage is still due and unpaid, the interest on said debt having been regularly paid up to and including January 1st, 1926. That there is now due on said mortgage debt the principal sum of one thousand dollars, and interest thereon from, towit, the 1st day of January, 1926, to the present time, together with the expenses of foreclosure, including a reasonable attorney's and solicitor's fee herein." (Supreme Court Records, Year 1930-31, 2nd Div. 976.)

The foregoing statement of facts indicates that Mr. Justice Sayre, the writer of the opinion, was in full accord with the wholesome doctrine announced in Goodwyn v. Baldwin, supra.

At the risk of repetition may we analyze the facts in the case of Winner, Klein & Co. v. First Nat. Bank, etc., supra. In that case the mortgage conveyed certain lands owned by W. R. Wallace and wife to Mr. Kirkland. Said mortgage was dated January 8, 1907, and was due and payable on December 31, 1907, the mortgage being duly filed for record. W. D. Kirkland, the mortgagee, died on June 26, 1908, devising his property to his wife, Jennie R. Kirkland, who died August 11, 1928. The complainant, First National Bank, was appointed administrator with the will annexed of the Kirkland estate. On March 14, 1921, W. R. Wallace and his wife sold and conveyed the said lands heretofore mortgaged to Kirkland to W. T. Wallace, said *conveyance recognizing the existence of the above-mentioned mortgage indebtedness.*

It should be observed that this conveyance was before the lapse of 20 years from the date of mortgage. On April 13, 1921, W. T. Wallace sold and conveyed the said lands to Winner, Klein & Co. It was averred that the indebtedness secured by said mortgage was still due and unpaid and that interest on said indebtedness was regularly paid to and including January 1, 1926, and that there was still due on the mortgage, in January, 1926, the principal and interest to the time of the filing of the bill. This was likewise before (or less than) the lapse of 20 years from the due date of the mortgage, and before the application of the rule of presumption of payment. The *averments of the bill showed recognitions of the indebtedness within the 20-year period.* So long as the status was between the same parties or privies in estate or by blood, it was immaterial that the bill was filed more than 20 years from the due date of the mortgage.

The learned associate justice, with whom I had the pleasure of long service in trial courts and in this court, did not intend to overrule the case of Goodwyn v. Baldwin, supra, as to the effect of the rule of presumption of payment under the recording statutes. Since appellant purchased before the mortgage had become 20 years past due, the Winner, Klein & Co. Case comes within the category of Christopher v. Shockley, 199 Ala. 681, 75 So. 158. If appellant had purchased after the expiration of 20 years (which he did not), and at the time of the purchase had actual notice of the payment of interest, that would have prevented any presumption of payment arising within the doctrine announced in Goodwyn v. Baldwin, supra. A purchaser cannot become a bona fide purchaser without notice, even after the mortgage is 20 years past due, if such purchaser is notified in his conveyance or that of his predecessor, or has *actual notice of partial payments* made thereon by mortgagor or his privies in estate or by blood. Such is the result of the case of Winner, Klein & Co. v. First Nat. Bank, etc., supra., as we have indicated.

The case of Winner, Klein & Co. et al. v. First Nat. Bank, etc., supra, cites Goodwyn v. Baldwin, supra, with approval and not with disapproval. *The vital question of notice to a bona fide purchaser is not discussed in the case of Winner, Klein & Co. et al. v. First Nat. Bank, etc., supra.* It will be further noted that the discussion in the case arose on demurrer by the privies in estate of the original mortgagors, who took the estate within the 20-year period.

The most that can be said of Justice Sayre's opinion is that it construed the bill as setting up facts sufficient to charge appellants with notice that bound them to recognition of the indebtedness. For further illustration may we say that, if the facts in the Winner, Klein & Co. Case should have been that appellants had purchased the land more than 20 years after the maturity of the debt, as bona fide purchasers, without actual notice that interest had been paid within the 20-year period, then the Winner, Klein & Co. Case would be inconsistent with the case of Goodwyn v. Baldwin, supra. Such are not the recited facts as the original record will show and as we have tried to indicate.

It is generally true that no legal question is finally settled until it is settled rightly. Chief Justice Stone declared the rule of "irrebuttable presumption (*praesumptions juris et de jure)*" for the protection of innocent third parties without actual notice in dealing with lands. That eminent Chief Justice declared this rule in Goodwyn v. Baldwin, 59 Ala. 127. Such was the wise declaration made 50 years ago, since recognized and accepted by the profession in this state. Many land titles have been declared marketable under that decision, based on the presumption that after the lapse of 20 years *without actual notice,* the bona fide purchaser without notice is protected by the presumption of settlement, and the rule was raised to the protection of the innocent purchaser without the required notice. This rule of presumption of payment and that of no debt no mortgage are of long and salutary effect.

That the Legislative intent by the recent act of 1927, Gen. Acts, p. 503, was not to upset approved land titles and was to adhere to the ancient rule is evident by its inspection. That act deals with an "indebtedness" and its record only. If the rule of presumption of payment had absolved or declared nonexistent an indebtedness (and therefore no mortgage), there was no field of operation for said act in a case like this.

This statute, and the ancient rule enunciated many years ago in this jurisdiction by that eminent jurist, Justice Stone, were promulgated to properly protect land titles and to prevent injustice, perjuries, and fraud relating thereto.

To illustrate the injustice of the rule announced in the original opinion, the following example might well be considered: The mortgage on real estate is recorded. The law leaves the mortgagor in possession *until after the law date,* when he is permitted to remain therein by the indulgence of the mortgagee; mortgagor remains in possession until just before the expiration of the first 20-year period, when he makes a payment to the mortgagee, who thereafter allows him to retain possession until just before the expiration of a second 20-year period; mortgagor makes another payment to mortgagee, who again permits him to retain possession until just before the expiration of a third 20-year period. The mortgagor sells or mortgages the property, being in possession of same, to an innocent third party without actual knowledge of the status of the mortgage as to the payments made thereon, said purchaser acting upon the presumption of payment within the first 20-year period. Which of the two parties is to be protected—the overindulgent mortgagee, or the innocent third party purchasing without knowledge of the facts?

The recording statute was not intended to protect such negligent mortgagee, who permitted the unreasonable extension of possession by the mortgagor, thus causing unjust discrimination as against an innocent third party who purchased without actual knowledge of the facts in the case.

In Lewis v. Owen, 231 Ala. 480, 165 So. 229, the date of conveyance was November 6, 1908, that was modified in its effect by the court; the mortgage to the Phoenix Mutual Insurance Company by Owen was of date July 4, 1923, recorded July 12, 1923, and the last note matured on January 1, 1933. The mortgagee sought foreclosure on May 16, 1933. The bill was then filed immediately for cancellation. The limitation of the insurance company's title ran with the land and put subsequent purchasers on notice, or to a due inquiry under the facts, as we have noted in the pleadings and exhibited conveyance. The Phoenix Mutual was not protected by the presumption of payment or satisfaction of consideration. In my judgment, this case in no wise touches the rule of Goodwyn v. Baldwin, supra.

At the risk of repetition we wish further to illustrate as follows: A in 1860 made a mortgage to B due 1 year after date and the same was promptly placed upon record; in 1880, 19 years after the mortgage became due, A made a payment on the mortgage debt; and in 1899, 19 years after the first payment, A makes another payment on the mortgage debt; 10 years after the last date A dies; 5 years after his death A's heirs sell the property to C who buys in good faith for value and without actual notice of the two payments made on the debt by A. In the year 1918, 57 years after the mortgage became due, 4 years after the death of A, and 19 years after the last payment made by A on the debt, B demands of C the possession of the premises and seeks foreclosure of the old or first mortgage. *All during the life of A he was in possession of the premises and after his death his heirs retained possession until they sold the property to C, who took possession.* A's heirs would acquire no greater right than A possessed and hence were bound by A's act in the premises.

The question presented in this case by the bank, the assignee of the mortgagor, is, is the latter bound by the acts of A, of which he had no actual knowledge? Otherwise stated, could A by his acts intercept the running of the prescriptive period, or the presumption of payment after the long lapse of time indicated in the rule so as to defeat C's right in the premises? These questions, we believe, are answered under the recording statutes and the constructions given by our court to which we have adverted at great length.

The purpose of the pertinent recording statute, Code, § 6887, is to protect this assignee, to protect the person who deals with the mortgaged property after the mortgage is made. The statute says that such mortgages unless recorded "are inoperative and void, as to purchasers for a valuable consideration, mortgagees, and judgment creditors without notice." It thus appears that the statute sought to protect those who dealt with the property subsequent to the execution of the mortgage; to make a permanent monument or memorial as to the status of the title to this property so that those who thereafter dealt with the property would not be called upon to resort to parol to ascertain this status. The statute did not confer any rights whatever *upon the mortgagor or his heirs* for so far as they are concerned the mortgage is absolutely valid and binding whether recorded or not, but *not so far as their assignees are concerned.* This being true, can the mortgagor *by his act or conduct unknown to his assignee* interrupt the running of the prescriptive period or presumption of payment

so far as this assignee is concerned? In dealing with the property did not this assignee for whose benefit this statute was enacted, in the absence of actual notice to the contrary, have the right to look to the record and the record alone to determine the status of the title and act thereon? When the record affirmatively shows that the mortgage has been due for more than 20 years, and there was nothing to show any payment on the mortgage debt or renewal thereof, or any change in the terms of the mortgage contract, and when all during this time this mortgagor and not the mortgagee was in actual possession of the property, did not this assignee have the right to seek the protection given by the doctrine of prescription or the rule of the presumption of payment? Especially is this true in view of the fact that ordinarily before the mortgage debt becomes due the mortgagor, and not the mortgagee, is entitled to possession of the mortgaged property, and the mortgagee has no right to foreclose his mortgage and destroy mortgagor's equity of redemption. After the mortgage debt becomes due the *mortgagee and not the mortgagor has the right to the possession of the mortgaged property,* and has the right to foreclose his mortgage and destroy mortgagor's equity of redemption. In other words, the status of the mortgagor and mortgagee *before the debt becomes due is different from their status after the debt becomes due.* Hence the justice and reason for the rule.

"Possession is nine points of the law," is a saying based upon the principle that he who is in possession of property is *presumed by the law to be its owner,* and to have the right of that possession. Now when C, the purchaser, knows that if the debt were not paid when it became due, as indicated and required by the record, B and not A would be entitled to possession of that property, and when he is informed by the record that the debt has been due for more than 20 years, and when he knows from other sources that all during that time A and not B was in the actual possession of the property, and when A by his warranty deed tells him the debt has been paid, did not the mortgage become "inoperative and void" as it affected C, and this by reason of the doctrine, to which we have adverted? C did nothing to intercept the running of the efficacious period. The statute; Code, § 6887, told the mortgagee, B, that his mortgage would be "inoperative and void" as far as C, the purchaser, was concerned, un-

less the mortgage was recorded. When B recorded his mortgage it spoke for itself to C, and *no unrecorded agreement or understanding,* verbal or written, between A and B, *of which C had no actual knowledge,* changing the terms of this mortgage, could affect C. No act on the part of A *unknown to C could affect C,* who had the right to view the mortgage as the mortgage *appeared on the record* with all the presumptions of law incident thereto. The mortgage told C when the debt that it secured would become due. It told C that if the debt was not paid *when it became due B would be entitled to the possession of the property.* C had the right to rely upon this record in the absence of notice to the contrary, and to presume that A did his duty, paid the debt as he promised to do, that A held possession of the property because he had the right to this possession, having paid the debt, and, after this status existed for the *period of 20 years, this presumption became conclusive.*

The fault with the holding in the Hendley Case, supra, is this: It places purchasers for a valuable consideration, mortgagees, and judgment creditors, without notice or knowledge (those protected by the statute), in the same category as mortgagors and heirs of mortgagors (those not protected by the statute). It improperly binds those protected by the statute by the acts of those not protected by the statute. It leaves it within the province of the mortgagor and mortgagee by their acts, of which the subsequent purchaser has no knowledge, to change the terms of the mortgage and its effect as it appears of record, to the *detriment of the purchaser whom the statute seeks to protect.*

It has been suggested, and in truth, to the writer that the original opinion in this case refers to the fact that there is no provision in the law for a second recordation of the mortgage. This is true, but it may be that, if the mortgagee had desired to make known to those who are protected by the recording statute the fact of partial payments having been made upon the mortgage debt, he could have done so by entering upon the margin of the record of the mortgage such partial payments. Code, § 9020 et seq., place a penalty upon the mortgagee for not making such entries if requested in writing so to do. This would seem to indicate that he would have the right to make such entries whether requested so to do or not, and if he had such right

and such entries were authorized by the law, then those who dealt with the mortgaged property thereafter would be fastened with notice of such payments, and notice of such payments might intercept the running of the prescriptive period.

Such is the effect of the just rule to which we have adverted and that in common parlance of banking institutions is sometimes termed the "out-law doctrine" that protects the innocent or the party less guilty of negligence in the premises.

A result different from that which we have shown under the ancient authorities is to be viewed with concern. "Remove not the ancient land-marks," are the words of wisdom and justice that come whispering to us across the centuries from Holy Writ.